Approved: _____
JESSICA R. LONERGAN // RUSSELL CAPONE
Assistant United States Attorneys

Before:   HONORABLE RONALD L. ELLIS
          United States Magistrate Judge
          Southern District of New York

13 MAG 2033    ORIGINAL
DOC # 1

- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          :   **SEALED COMPLAINT**

          - v. -                  :   Violation of 21 U.S.C.
                                      § 846
ERNESTO OLIVO,                    :
  a/k/a "Ernesto Perez,"              COUNTY OF OFFENSE:
  a/k/a "Jimenez,"                :   BRONX

                    Defendant.    :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          KEVIN J. WOOD, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

                              COUNT ONE

          1.   From in or about May 2013 through in or about July 2013, in the Southern District of New York and elsewhere, ERNESTO OLIVO, a/k/a "Ernesto Perez," a/k/a "Jimenez," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

          2.   It was a part and an object of the conspiracy that ERNESTO OLIVO, a/k/a "Ernesto Perez," a/k/a "Jimenez," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance involved in the offense WAS five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

4. I am a Special Agent with the DEA. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Since in or about December 2012, the DEA in the Dominican Republic, Miami, Florida, and New York have been investigating a drug trafficking organization (the "DTO") involved in the distribution of cocaine, of which ERNESTO OLIVO, a/k/a "Ernesto Perez," a/k/a "Jimenez," the defendant, is believed to be a part.

6. From my participation in this investigation, I have learned, in substance and in part, that this investigation has involved the use of a paid confidential source ("CS-1"). CS-1 has proven reliable in that information provided by CS-1 has been corroborated in part by, among other things, physical surveillance conducted by DEA agents and consensually recorded telephone calls.

7. Based on my discussion with DEA agents based in Miami, Florida, I have learned the following:

    a. CS-1 is believed by the DTO to be an individual who can arrange for narcotics to be transported from overseas to the United States.

    b. In or about May and June 2013, CS-1, working with DEA agents in Miami, Florida, arranged for members of the

2

DTO based in Ecuador (the "Ecuador Co-conspirators") to ship 18 kilograms of cocaine to Miami.

   c.   According to CS-1, once the cocaine arrived in Miami, the Ecuador Co-conspirators would arrange for a potential purchaser of the cocaine to contact CS-1 or an individual designated by CS-1.

   d.   On or about June 8, 2013, DEA agents in Miami, Florida seized 18 kilograms of a white powdery substance that had been arranged for shipment to CS-1 by the Ecuador Co-conspirators. The substance seized field tested positive for the presence of cocaine.

   e.   After DEA agents seized the 18 kilograms of cocaine, CS-1 provided the Ecuador Co-conspirators with the phone number for an undercover law enforcement officer (the "UC"), whom CS-1 told the targets would be responsible for transporting the cocaine from Miami to the Ecuador co-conspirators ultimate purchaser. The Ecuador co-conspirators indicated to CS-1 that a purchaser would contact the UC.

   8.   On or about June 11, 2013, at approximately 2:50 p.m., the UC received a telephone call from an individual subsequently identified as ERNESTO OLIVO, a/k/a "Ernesto Perez," a/k/a "Jimenez," the defendant, who was using a cellular telephone with a call number ending in 2253 (the "2253 Cellphone"). The call was conducted in Spanish and was recorded by the UC. A DEA employee who is fluent in Spanish has reviewed the recording and provided the following draft English translation of the recording:

   UC:      HELLO.

   OLIVO:   HELLO, NINO.

   UC:      YES, HOW'S IT GOING?

   OLIVO:   FINE, FINE. HOW ARE YOU?

   UC:      EVERYTHING'S GOOD, EVERYTHING'S GOOD, BROTHER.

   OLIVO:   OH, THIS IS JIMENEZ ON BEHALF OF "TIJERA."

   UC:      YES, YES, YES, HOW'S IT GOING JIMENEZ?

3

| | |
|---|---|
| OLIVO: | WE ARE HERE (INAUDIBLE), WATCHING THE WATER FALL, IT'S RAINING A LOT OVER HERE. |
| UC: | AH, EASY, EASY. |
| OLIVO: | HUH? |
| UC: | NO, HUH, I DON'T KNOW IF YOU KNOW THE INFORMATION, BUT, WE HAVE THE WOMEN. EH, THE 18. AND, WHAT I AM WAITING FOR IS THE GREEN, THAT'S WHAT I'M WAITING FOR. |
| OLIVO: | WHAT ARE YOU WAITING FOR? |
| UC: | THE GREEN, THE PAPER. THAT'S THE ONLY THING THAT I NEED FOR MY SERVICE, THAT, IT SEEMS LIKE THEY DON'T HAVE THE PAPER. |
| OLIVO: | OH, OK, OK. |
| UC: | THAT'S THE ONLY THING. THE MOMENT THEY GIVE ME THE PAPER FOR MY SERVICE I'LL LET GO OF THE WOMEN. |
| OLIVO: | OH, OK, OK. HOW MUCH IS THE SERVICE? |
| UC: | 108 |
| OLIVO: | 108? |
| UC: | EXACTLY. |
| OLIVO: | OH. LET ME CALL MY ASSOCIATE. DON'T YOU HAVE A (INAUDIBLE)? |
| UC: | NO, I DON'T HAVE. |
| OLIVO: | OH, OK, OK. |
| UC: | I DON'T HAVE. |
| OLIVO: | OK. LET ME CALL MY ASSOCIATE TO TELL HIM. YOU SAID 108? |

| | |
|---|---|
| UC: | EXACTLY, EXACTLY. |
| OLIVO: | OK. |
| UC: | OK, JIMENEZ, CALL ME. |
| OLIVO: | OK. |
| UC: | OK. |

9. Based on my training, experience, participation in this investigation, and discussions with CS-1 and the UC, I believe that in this call, OLIVO is identifying himself as the individual who is going to purchase the 18 kilograms of cocaine. The UC tells OLIVO that he has the cocaine and is waiting to be paid before he can deliver it. ("WE HAVE THE WOMEN. EH, THE 18. AND, WHAT I AM WAITING FOR IS THE GREEN, THAT'S WHAT I'M WAITING FOR.") OLIVO asks the UC what his transportation fee will be ("HOW MUCH IS THE SERVICE?"), and the UC responds that it will cost $108,000 to transport the 18 kilograms ("108"). OLIVO indicates he will confer with his co-conspirators and get back to the UC ("LET ME CALL MY ASSOCIATE TO TELL HIM").

10. I have reviewed cell site data for the 2253 Cellphone obtained pursuant to a court order. Based on my review, I have learned that during the telephone call discussed in paragraphs 8 above, the 2253 Cellphone, which was being used by ERNESTO OLIVO, a/k/a "Ernesto Perez," a/k/a "Jimenez," the defendant, was located in the vicinity of a particular location in the Bronx, New York (the "Location").

11. Based on geolocation information for the 2253 Cellphone obtained pursuant to a court order, I know that the 2253 Cellphone was frequently in the vicinity of the Location during July and August of 2013.

12. On or about July 11, 2013, another DEA agent ("Agent-1") was performing surveillance near the Location. Based on my discussion with Agent-1, I know that at that time, Agent-1 placed a call to the 2253 Cellphone. Immediately thereafter, Agent-1 observed an individual subsequently identified as ERNESTO OLIVO, a/k/a "Ernesto Perez," a/k/a "Jimenez," the defendant, answer his cellular telephone and respond to Agent-1 as Agent-1 spoke.

13. Agent-1 obtained a New York driver's license for "Ernesto Olivo." Agent-1 compared the photograph on the driver's license with the appearance of the individual who Agent-1 observed answer the 2253 Cellphone on or about July 11, 2013, and Agent-1 believes that it is the same individual.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of ERNESTO OLIVO, a/k/a "Ernesto Perez," a/k/a "Jimenez," the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

_____
KEVIN J. WOOD
Special Agent
Drug Enforcement Administration


Sworn to before me this
16th day of August, 2013.

_____
THE HONORABLE RONALD L. ELLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK