USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/2/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                                          :

UNITED STATES OF AMERICA            :

                                                     :          15-CR-194 (VEC)

              -against-             :

                                                     :          <u>ORDER</u>

ERNESTO OLIVO,                           :

                                                     :

                                 Defendant.    :
------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

       WHEREAS on September 9, 2020, Mr. Olivo, *pro se*, filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and requested the Court to appoint counsel to further develop his motion, Dkt. 75;

       WHEREAS on September 14, 2020, the Court ordered the Government to respond to Mr. Olivo's motion and held in abeyance his request for counsel until it received the Government's response, Dkt. 76;

       WHEREAS on October 9, 2020, the Government filed a letter in opposition to Mr. Olivo's motion and provided his Bureau of Prisons ("BOP") medical records (under seal), disciplinary records, and educational records, Dkt. 77;

       WHEREAS on October 14, 2020, the Court appointed counsel to represent Mr. Olivo in connection with his motion for compassionate release, Dkt. 78;

       WHEREAS on November 16, 2020, counsel filed on Mr. Olivo's behalf a supplementary letter in further support of his motion, Dkt. 82;

       WHEREAS on December 4, 2020, the Government filed a letter in response to counsel's supplementary submission in support of Mr. Olivo's motion, Dkt. 84;

       WHEREAS Mr. Olivo has satisfied the exhaustion requirement contained in 18 U.S.C. § 3582(c)(1)(A), *see* Def. Mot. at 2, Ex. 1, Dkt. 75; Gov't Opp. at 3–4, Dkt. 77;

WHEREAS this Court may reduce Mr. Olivo's term of imprisonment if, after considering the § 3553(a) factors, to the extent applicable, it determines that extraordinary and compelling reasons warrant such a reduction, 18 U.S.C. § 3582(c)(1)(A); and

WHEREAS the Court has discretion to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might" put forth in seeking a sentence reduction and is not bound by policy statements or guidance articulated by the Sentencing Commission or BOP, *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020);

IT IS HEREBY ORDERED that Mr. Olivo's motion for compassionate release is DENIED.  Even assuming that Mr. Olivo can demonstrate extraordinary and compelling circumstances warranting release, he has not shown that a sentence reduction would be consistent with the § 3553(a) factors.

Mr. Olivo undoubtedly has serious medical issues, many of which are complications of his paraplegia, including urinary tract infections, back pain, and pressure sores on his buttocks. In addition, Mr. Olivo is hypertensive.  *See* Def. Mot. at 4; Gov't Opp. at 3; Def. Suppl. Submission at 5, Dkt. 82; Medical Records.  Of Mr. Olivo's medical conditions, the Centers for Disease Control and Prevention ("CDC") classifies only hypertension as a potential comorbidity that may increase Mr. Olivo's risk of serious illness were he to contract COVID-19.  *See COVID-19: People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (listing hypertension as a condition that might place individual at increased risk for severe illness from COVID-19).  Nevertheless, Mr. Olivo argues that his paraplegia and accompanying complications leave him more susceptible to both contracting and suffering severe symptoms were he to contract COVID-19.  *See* Def. Mot. at 4–5; Def. Suppl. Submission at 5–6.  Despite a seeming lack of explicit evidence linking individuals with

paraplegia to greater risk of contracting or suffering from severe cases of COVID-19, at least one organization that is dedicated to spinal cord injuries supports Mr. Olivo's contention, relying on evidence of the interplay between those with spinal cord injuries and viruses generally. *See* Linda Schultz, *The Coronavirus and Spinal Cord Injury*, Christopher & Dana Reeve Found. (Mar. 17, 2020), https://www.christopherreeve.org/blog/daily-dose/the-coronavirus-and-spinal-cord-injury.[1] It is at least plausible that the additional avenues for infection from frequent catheterization and a potentially weakened respiratory system, combined with hypertension, leave Mr. Olivo at increased risk for contracting and suffering an adverse outcome from COVID-19. *See, e.g.*, *United States v. Potts*, No. 06-CR-80070, 2020 WL 5540126, at *4–5 (S.D. Fla. Sept. 14, 2020) (discussing the impacts of a spinal cord injury on the respiratory system and noting that these side effects "may make it more difficult for Defendant to recover from the virus if he contracts it"); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) ("[Defendant's] host of medical ailments arising from his paraplegia would likely place him at higher risk of complications should he contract COVID-19."); *but see, e.g.*, *United States v. Munoz*, No. 12-CR-295, 2020 WL 5775020, at *4 (E.D. Tex. Sept. 25, 2020) (acknowledging that defendant with paraplegia, hypertension, and other conditions qualified as "a complex chronic care patient" but holding that he still did not demonstrate extraordinary and compelling circumstances); *United States v. Wells*, No. 17-CR-104, 2020 WL 4747717, at *2 (E.D. La. Aug. 17, 2020) (finding that paralysis, neuropathy, and urinary tract issues "do not elevate Defendant's risk of contracting Covid-19 to the level of 'extraordinary and compelling,' as none of the conditions place him amongst the CDC's high-risk Covid-19 categories").

---

[1] It should be noted, however, that this article was published on March 17, 2020, at the very outset of the COVID-19 pandemic, before much real data specific to COVID-19 was available.

Despite these serious medical considerations, there are some countervailing factors that mitigate against finding that Mr. Olivo has established extraordinary and compelling circumstances warranting early release. First, while the allocation of vaccines is still uncertain, given his medical conditions and incarceration in a federal facility, the Court anticipates that Mr. Olivo will be among the earlier recipients of a COVID-19 vaccine. Second, Mr. Olivo is incarcerated at a Federal Medical Center, where he receives constant medical attention and where due care is expended on ensuring that his medical conditions are monitored and controlled. As a result, Mr. Olivo is on a host of medications, which appear to help keep his conditions, including hypertension, well managed. *See* Medical Records. Finally, the Court must consider the fact that COVID-19 is running rampant not just in federal prisons but also in the community at large. *See Facility Case Trends*, Off. Inspector Gen., U.S. Dep't of Just., https://www.arcgis.com/apps/MapSeries/index.html?appid=a3e98be1aab94eadaaeaa96ed176f418 (last visited Dec. 27, 2020) (showing that Olmstead County, Minnesota, in which FMC Rochester is located, had 8,600 COVID-19 cases as of December 20, 2020, its highest count since data became available).

Yet the Court must also acknowledge the reality that Mr. Olivo faces at FMC Rochester. At the time it filed its opposition to Mr. Olivo's motion, the Government contended that there was "a fairly low number of positive COVID-19 tests at FMC Rochester," thereby arguing that it was not clear that Mr. Olivo would face a lower risk of contracting COVID-19 were he to be released. Gov't Opp. at 7. While the general dangerousness of the ongoing COVID-19 pandemic and the possibility that it may spread to a particular prison are insufficient to establish extraordinary and compelling reasons justifying release, *see United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020), *United States v. Weeks*, No. 16-CR-167, 2020 WL 1862634, at *3 (S.D.N.Y. Apr. 14, 2020), as of December 31, 2020, there were 65 active infections among inmates at FMC

Rochester, with four infections among staff. *See COVID-19: Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 31, 2020). It is clear, then, that the risk of contracting COVID-19 in Mr. Olivo's facility is more than theoretical; over 10% of inmates at FMC Rochester presently have COVID-19, while nearly another 30% have contracted and recovered from the virus. *See id.* (showing that 65 inmates presently have COVID-19 while 182 have contracted and recovered from it); *FMC Rochester*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/rch/ (last visited Dec. 31, 2020) (listing population at FMC Rochester as 629 total inmates).

Thus, despite the fact that Mr. Olivo's medical conditions, while serious, are not among those thus-far designated as significant comorbidities associated with COVID-19, considering the extensive outbreak at FMC Rochester and the possibility that Mr. Olivo is at heightened risk of contracting and suffering severe symptoms of COVID-19, the Court will assume that he has satisfied the extraordinary and compelling showing necessary to warrant a sentence reduction. Even so, Mr. Olivo has failed to demonstrate that the section 3553(a) factors support his early release.

Mr. Olivo was found guilty after trial of conspiring to distribute and possessing with intent to distribute more than five kilograms of cocaine, more than 50 grams of methamphetamines and its salts, and more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). *See* Gov't Opp. at 1–2; Presentence Investigation Report ("PSR") ¶¶ 1, 3. While this was Mr. Olivo's first criminal conviction, his offense conduct involved a multiyear conspiracy including significant shipments and sales of controlled substances across state lines. *See* Gov't Opp. at 2; PSR ¶¶ 7–12. The Probation Department calculated Mr. Olivo's total offense level as 36 and his criminal history category as I, resulting in a Guidelines range of 188 to 235 months, followed by a five-year term of supervised release.

PSR ¶¶ 60, 62.  Noting his medical condition, age, and lack of prior convictions, Probation ultimately recommended a sentence of 120 months (the mandatory minimum), followed by a five-year term of supervised release.  *See id.* at 14.  At sentencing, the Court added a two-level enhancement to Mr. Olivo's total offense level for obstruction of justice, finding that he "lied in substantial regards," thus bringing his total offense level to 38, and increasing his Guidelines range to 235 to 293 months' imprisonment.  *See* Sentencing Tr. at 7–10, Dkt. 66.  The Court ultimately agreed with Probation's recommendation, however, sentencing Mr. Olivo to the mandatory minimum 120 months' incarceration, followed by five years of supervised release; the Court specifically considered Mr. Olivo's paraplegia and the likelihood of his deportation in deciding to depart downwardly so significantly.  *See id.* at 19–22.

Having already received the mandatory minimum sentence, resulting in an exceptionally large departure from the Court's calculation of Mr. Olivo's Guidelines sentence, and with more than three years remaining until his projected release date, Mr. Olivo asks the Court to vary even further from the recommended sentence for his criminal conduct.  Even after reevaluating the section 3553(a) factors in light of current circumstances, a sentence of less than six years is insufficient to achieve the goals of sentencing.  Of the sentencing factors, only the need to consider the characteristics of the defendant tilt in Mr. Olivo's favor at this time.  *See* 18 U.S.C. § 3553(a).  While the Court considered Mr. Olivo's paraplegia and accompanying health concerns at the time of his original sentencing, it could not have foreseen the potential interplay of those medical concerns with an international pandemic that may place Mr. Olivo at increased risk of serious illness were he to contract COVID-19.  Thus, as they did when the Court originally imposed sentence on Mr. Olivo, his medical condition supports a shorter sentence than would otherwise be appropriate.

The remaining sentencing factors all weigh against a reduction of Mr. Olivo's sentence to time served. As the Court found at the time of sentencing, Mr. Olivo's criminal conduct was undoubtedly serious; he was part of a distribution network in which he "broker[ed] illegal substances for a substantial period of time" and "seemed willing to broker any kind of illegal drug that came along, including methamphetamine, which is a seriously destructive drug to society." Sentencing Tr. at 20. Mr. Olivo has served slightly more than half of his original 10-year term of incarceration and has an expected release date, accounting for good-time credit, of January 24, 2024. *See* Gov't Opp. at 3; Def. Suppl. Submission at 2. A sentence of less than six years does not properly reflect the seriousness of Mr. Olivo's criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A). Similarly, at four years below the mandatory minimum, it would undoubtedly result in significant sentencing disparities for similarly situated defendants. *See id.* § 3553(a)(6).

Further, a sentence reduction would undermine the goals of deterrence. *Id.* § 3553(a)(2)(B). Mr. Olivo's disciplinary records reveal that he has incurred four infractions within the past approximately 20 months, ranging from refusing orders to fighting with another person. *See* Disc. Records, Dkt. 77-3. While the Court notes that certain of these infractions may stem from Mr. Olivo's mental health conditions, he is nonetheless required to abide by the rules of his facility, and the consistency of his disciplinary issues undermines Mr. Olivo's claims to have been rehabilitated. *See* Def. Mot. at 6; Def. Suppl. Submission at 11. Further, while Mr. Olivo represents that his physical limitations and health issues have hindered his ability to pursue educational or other rehabilitative programs while incarcerated, the fact that he has failed to participate meaningfully in education or training programs while incarcerated undermines his claim that he has "addressed his criminal thinking" and has "used his time in a positive manner." Def. Mot. at 6; Def. Suppl. Submission at 11. While the Court hopes that six years of confinement, and especially the last nine months, have caused Mr. Olivo to disavow any future

criminal behavior, at present, there is little evidence from which the Court can draw that conclusion.

Finally, the Court must consider the need to protect the public from further crimes of the defendant.[2]  18 U.S.C. § 3553(a)(2)(C).  While Mr. Olivo's age and medical conditions would normally support a finding that Mr. Olivo is of minimal risk to commit future crimes, in this case, he appears to have commenced committing crimes at a relatively advanced age and after he had already been wheelchair-bound for more than a decade.  *See* Gov't Opp. at 7.  Mr. Olivo's health does appear to have deteriorated somewhat while he has been incarcerated, however, perhaps making recidivism somewhat less likely.  *See* Def. Mot. at 4; Def. Suppl. Submission at 12.  At best, the Court considers this factor as neutral, which is insufficient to tilt the balance of the sentencing factors in Mr. Olivo's favor.

In sum, the Court does not find that Mr. Olivo's medical concerns are so serious as to "convert[] his 120-month sentence into a *de facto* death sentence," Def. Suppl. Submission at 7, nor does the Court find that Mr. Olivo has demonstrated that the section 3553(a) factors support a sentence reduction of more than three years from an already well-below Guidelines sentence.

As an alternative to granting Mr. Olivo's motion for compassionate release, counsel requests that the Court recommend that BOP redesignate Mr. Olivo to serve the remainder of his term of incarceration on home confinement.  *See* Def. Suppl. Submission at 13–15.  As the Government asserts, converting the remainder of Mr. Olivo's prison term to home confinement is within the exclusive purview of BOP.  *See* Gov't Opp. at 7–8 (citing 18 U.S.C. § 3624(c) and collecting cases).  Nevertheless, it does not appear that BOP ever seriously considered Mr. Olivo

---

[2] Although Mr. Olivo still appears likely to face eventual deportation, as the Government notes in its opposition, ICE has already lifted or intends to lift its detainer and will therefore pursue deportation proceedings against Mr. Olivo in a non-detained status.  *See* Gov't Opp. at 4.  It seems likely, therefore, that Mr. Olivo will spend an undetermined period in the United States, requiring the Court to consider his likelihood to recidivate.

as a candidate for home confinement because of his ICE detainer. *See* Gov't Opp. at 8. According to his attorney, Mr. Olivo appears to meet most if not all of the criteria included in the Attorney General's March 26, 2020 memo intended to assist BOP in identifying candidates for home confinement due to the COVID-19 pandemic. *See* Def. Suppl. Submission at 14–15. The Court therefore recommends that BOP consider whether Mr. Olivo is a suitable candidate for home confinement, assuming ICE has lifted its detainer.

For the foregoing reasons, Mr. Olivo's motion for compassionate release is DENIED. The Clerk of Court is respectfully requested to terminate the open motions at Dkts. 75 and 82 and to mail a copy of this Order to Mr. Olivo at the following address: Ernesto Olivo, Reg. No. 91048-054, FMC Rochester, PMB 4000, Rochester, MN 55903-4000.

**SO ORDERED.**

Date: January 2, 2021
New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**